**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona   85201
Telephone No.:  (480) 464-1111
Facsimile No.:  (480) 464-5692
Email:  centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:   Michael R. Pruitt, SBN 011792
        Email:   mpruitt@jacksonwhitelaw.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Kathy Brooks,<br><br>          Plaintiff,<br><br>v.<br><br>Central Arizona College, also known as Pinal County Community College District,<br><br>          Defendant. | Case No.:  CV_____<br><br>**COMPLAINT**<br><br>(Violation of 42 U.S.C. § 1983)<br><br>(*Jury Trial Requested*) |

Plaintiff, Kathy Brooks, by and through her counsel undersigned, and for her Complaint, alleges as follows:

**INTRODUCTION**

1. Plaintiff Kathy Brooks (hereinafter "Plaintiff" or "Ms. Brooks") was formerly employed by Central Arizona College, also known as Pinal County Community College District (hereinafter "Defendant" or "CAC").

2. Ms. Brooks performed her job duties with CAC at or above satisfactory levels, leading CAC to twice renew her employment contract with CAC.

-1-

3. Ms. Brooks' employment contract with CAC was terminated without actual notice and without due process.

## I. NATURE OF CLAIM

4. This is a proceeding for injunctive relief and damages against Defendant CAC to redress the deprivation of due process rights secured to Ms. Brooks by 42 U.S.C. § 1983.

## II. JURISDICTION

5. The events giving rise to this cause of action occurred in Pinal County, Arizona within the jurisdiction of this Court.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

## III. VENUE

7. Based on 28 U.S.C. § 1391 and 42 U.S.C. § 1983, venue is proper because the acts detailed in this Complaint occurred within the State of Arizona and the jurisdiction of this Court.

## IV. PARTIES

8. Ms. Brooks worked for CAC from October 7, 2019 to May 18 or 19, 2021. Ms. Brooks began working for CAC as a Professor of Psychology. Later, she was promoted to lead faculty for the Psychology Department. She remained in her position as Professor of Psychology and lead faculty for the Psychology Department until her termination on May 18 or 19, 2021.

9. Ms. Brooks is, and at all times relevant to this action has been, a resident of Arizona residing in Maricopa County, Arizona.

10. Defendant CAC is a community college district organized and operating under the color of state law as a political subdivision of the State of Arizona pursuant to A.R.S. § 15-1401, *et seq*.

11. CAC has five campuses and three centers located throughout Pinal County.

## V. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. Kathy Brooks' work history with CAC.

12. Ms. Brooks has worked in the field of academia for over twenty years.

13. Ms. Brooks began working for CAC on October 7, 2019 as a Professor of Psychology, in the middle of the 2019-2020 CAC fiscal year. Jacquelyn Elliott, Ed.D., President and CEO of CAC, signed a Letter of Intent to Employ Ms. Brooks on October 7, 2019 for the authorized period from October 7, 2019 through May 15, 2020. The letter expressly states the following: "No signature is required. A copy of this letter will be placed in your personnel file. This assignment may be subject to approval at the next legally convened Governing Board meeting." A copy of the letter is attached as Exhibit 1.

14. Ms. Brooks' performance as Professor of Psychology at CAC during the 2019-2020 fiscal year was at least satisfactory. Ms. Brooks satisfactorily completed her six-month initial probationary period with CAC and went on continued status.

15. CAC gave Ms. Brooks a "2020/2021 Letter of Intent to Employ" dated April 27, 2020, a copy of which is attached as Exhibit 2. The letter is signed by the President of CAC and states, "[c]ongratulations, this letter serves as the College's official notice to employ you for the upcoming fiscal year of 2020-2021." The letter also states, "[n]o signature is required. A copy of this letter will be placed in your personnel file. We look forward to another year of successfully serving our students and our community." The authorized period is listed from July 1, 2020 to June 30, 2021.

16. As a result of Ms. Brooks' demonstrated good performance, in early 2021, CAC promoted Ms. Brooks to lead faculty for the Psychology Department after only a little more than a year working at CAC.

17. By letter dated May 4, 2021, CAC renewed Ms. Brooks' contract for the second time for the 2021-2022 CAC fiscal year. A copy of the contract renewal is attached as Exhibit 3.

18. The President of CAC signed the 2021/2022 contract with an authorized period from July 1, 2021 to June 30, 2022.

19. Once again, the May 4, 2021 letter of intent to employ expressly states as follows: "[n]o signature is required. A copy of this letter will be placed in your personnel file. We look forward to another year of successfully serving our students and our community."

**B. CAC's policies applicable to Ms. Brooks and applicable Arizona law.**

20. Arizona statutory law recognizes the employment relationship is severable at will by the employee or the employer unless there is a signed written contract to the contrary setting forth that the employment relationship will remain for a specified duration of time or otherwise expressly restricting the right of either party to terminate the employment relationship. "Both the employee and the employer must sign this written contract, or this written contract must be set forth in the employment handbook or manual or any similar document distributed to the employee, if that document expresses the intent that it is a contract of employment, or this written contract must be set forth in a writing signed by the party to be charged." A.R.S. **§** 23-1501(A)(2).

21. CAC adopted written policies during the employment of Ms. Brooks that applied to the employment relationship of non-probationary, full-time employees. These policies provided non-probationary, full-time employees, like Ms. Brooks, with a property interest in their jobs and procedural due process to end the employment relationship with CAC.

22. CAC's "Disciplinary Action" Procedure, ¶ 3, Disciplinary Appeal Hearing Procedure, states:

    a. A full-time employee who has completed his/her initial probationary period is entitled to a Disciplinary Appeal Hearing prior to a final decision on an involuntary demotion, suspension, or dismissal.

    b. The Disciplinary Appeal Hearing provides the employee the opportunity to know what disciplinary action is being considered and the basis for that action. It also provides the employee an

opportunity to share information which may impact the decision by explaining his/her side of the story or revealing mitigating circumstances.

23. CAC's "Appeal" Procedure states, in pertinent part:

PURPOSE:

An employee may appeal a dismissal, involuntary demotion, or suspension without pay for eight (8) work days or more. …. The appeal process is available to full-time employees who have completed their probationary period and does not apply to group appeals.

PROCEDURE:

1. Filing an Appeal

   a. The employee must file an appeal with Talent Development in writing within four (4) working days of notice of the supervisor's decision.

   b. The appeal must contain a detailed statement of the basis for the appeal, the reasons the employee believes the discipline is improper and the relief requested. The timely filing of an appeal by the employee suspends imposition of the discipline until the appeal process is completed and a final decision is issued. If no request for a hearing is filed, the discipline presented will be issued.

   c. The Vice President, Talent Development/Legal Affairs shall schedule a hearing on the appeal within forty-five (45) working days from the date of filing. The Vice President, Talent Development/Legal Affairs shall notify all parties of the date, time, and place of hearing.

2. Form of Hearing

   a. A hearing officer will be designated by the Vice President, Talent Development/Legal Affairs to hear the appeal. The hearing officer may be a Vice President or Dean not directly involved with the decision being appealed or an individual retained by the College to hear an appeal. The hearing officer

is responsible for determining that the College has followed proper procedures in matters concerning the dismissal, involuntary demotion, or suspension without pay.

b. The employee has the right to be represented by legal counsel of his/her choice; however, the College is not liable for any cost or expense incurred for such representation. The employee must notify the Vice President, Talent Development/Legal Affairs as to whom, if anyone, will be representing him/her at the hearing at least three (3) working days prior to the beginning of the hearing.

c. A College representative shall prepare and present the College's case.

d. The hearing officer shall be able to examine witnesses under oath when conducting a hearing and shall also have the authority to administer oaths to witnesses.

e. A list of witnesses must be submitted to the Vice President, Talent Development/Legal Affairs three (3) working days prior to the hearing. Once both parties have provided their witness lists, copies will be provided to the employee and the supervisor.

f. All documents/exhibits/witness lists presented as evidence will be submitted to the Vice President, Talent Development/Legal Affairs prior to the hearing. Once both parties have provided their documentation, copies will be provided to the employee and the supervisor.

g. The hearing shall be closed to the public. The hearing officer shall be entitled to legal counsel for the purposes of advising and assistance with the administration of the hearing. The hearing shall be informal in nature. The rules of evidence shall not apply, provided that irrelevant, immaterial and unduly repetitious evidence be excluded.

h. The hearing officer will conduct the hearing and is authorized to take evidence and to hear oral testimony presented by either side. Both parties may begin the hearing by making a brief opening statement. After both sides have presented their

cases, each side will have an opportunity to make a closing statement.

3. Closing Decision

   a. Upon conclusion of the hearing, the hearing officer shall provide a written decision to the President, the employee, and the supervisor, and the Vice President, Talent Development/Legal Affairs within eight (8) working days. Within eight (8) working days thereafter, the College President, or his or her designee will review the hearing officer's findings and recommendation and render a written decision. A copy of the President's decision shall be provided to the employee, the supervisor, and the Vice President, Talent Development/Legal Affairs. The President's decision to uphold a suspension without pay is final and is not subject to further appeal. If the President decides that the dismissal or demotion should be upheld, then the decision shall be reported to the District Governing Board for ratification during its next meeting. If the President's decision is to reverse or modify the dismissal, demotion, or suspension without pay, then the President shall, within four (4) working days after receipt of the decision, either take or direct other employees to take any administrative actions necessary to implement the hearing officer's decision. No additional evidence, testimony or comments will be considered once the hearing has been officially closed. At that time, the hearing is completed and only the evidence, testimony and comments made prior to the official closing will be considered.

4. Appeal of President's Decision

   a. An employee may appeal to the District Governing Board the President's decision of dismissal or demotion. The employee must file an appeal with the President's office in writing within four (4) working days of notice of the President's decision.

   b. The appeal must contain a detailed statement of the reasons why the employee believes the President's decision should not be upheld. The appeal shall be addressed to the District Governing Board. Upon receipt of the appeal, the President will schedule the matter to be heard by the District Governing

> Board during its next meeting. The hearing will be held in executive session, unless the employee demands that it be held in open session. The District Governing Board will be provided all documentation to review. No witnesses or evident [sic] will be presented at the appeal. If the employee chooses to have legal counsel present at the appeal, the employee shall give written notice of such representation to the President at least four (4) working days prior to the appeal meeting. After the District Governing Board hears the arguments by both sides, it will render a decision. The Governing Board decision is final, and no further appeal may be taken.

24. The Procedures expressly regulate the right of CAC to terminate the employment relationship of full-time, non-probationary employees. The Procedures also expressly provide affirmative due process rights and privileges in favor of full-time, non-probationary employees.

25. Ms. Brooks had a reasonable expectation or a legitimate claim of entitlement to continued employment, at least through the end of the fiscal 2021/2022 school year.

**C.    Ms. Brooks' termination.**

26. Sometime between May 3 and May 5, 2021, Ms. Brooks spoke with her supervisor, Dr. Derrick Span, District Division Chair, Social and Behavioral Sciences, and Professor of Sociology, concerning emails she had received from two students asking if there was going to be a final exam in her class, and also regarding emails she had received from some students complaining about discrepancies on grades.

27. Sometime shortly after receipt of the emails from students, Ms. Brooks learned the discrepancies on grades were due to problems with CAC grading software being out of sync. Upon learning of the student's concerns about grading discrepancies, Ms. Brooks posted information for students on Blackboard. Additionally, Ms. Brooks posted on Blackboard information regarding the upcoming final exam for students.

28. Prior to Ms. Brooks' May 3-5, 2021 conversation with Dr. Span, and unknown to Ms. Brooks at the time, the two students who emailed her asking if there was

going to be a final exam in her class and the students who emailed her complaining about discrepancies on grades had also spoken to Dr. Span, and on May 2, 2021, Dr. Span had sent Ms. Brooks an email informing her that two of her students were trying to contact her and asking her to contact the students that week.

29. During their May 3-5, 2021 conversation, Dr. Span told Ms. Brooks about his conversation with these students. Ms. Brooks responded to Dr. Span that she had already contacted the students and had previously posted information about the grade discrepancies and regarding the upcoming final exam on Blackboard. Dr. Span requested Ms. Brooks send him proof of posting the information.

30. Shortly after their conversation, Ms. Brooks searched her emails/postings in Blackboard for the emails/postings she had sent regarding grade discrepancies and the final exam. She was able to locate the April 29, 2021 email/posting she had sent regarding the grade discrepancies, but not the email/posting she had sent regarding the final exam. Ms. Brooks, therefore, sent another announcement regarding the final exam, and she sent a screenshot of that announcement to Dr. Span. She also forwarded her April 29, 2021 email/posting regarding the grade discrepancies to Dr. Span.

31. On May 5, 2021, another one of Ms. Brooks' students called and told her that she (the student) had emailed Ms. Brooks several requests to sign paperwork needed for her to transfer schools. Because Ms. Brooks did not respond to her emails, the student called Ms. Brooks.

32. All of Ms. Brooks' students, co-workers, and management, including Dr. Span, had Ms. Brooks' cell phone number and could contact her any time by cell phone.

33. While speaking to the student, Ms. Brooks checked her emails for an email from the student, but did not find one. This was Ms. Brooks' first notification that there was any problems with her email.

34. Prior to this student's phone call, Ms. Brooks had no notification from CAC, IT, her supervisor, Dr. Span, or any of her co-workers that there were any problems with her sending or receiving emails. Ms. Brooks requested the student send her the email

again while they were on the phone. The student complied, but Ms. Brooks still did not receive the student's email.

35. Believing that there was a problem with her email, after speaking with the student, Ms. Brooks immediately submitted a ticket, Ticket No. 179803, to the IT Department of CAC. On the ticket Ms. Brooks stated: "I am unable to access my email. I keep getting a box, which directs me to enter my password. However, when I enter the password, I still cannot get in. (I changed my password today.)"

36. Additionally, shortly after speaking with her student, Ms. Brooks text messaged Dr. Span stating, "Derrick [sic], I tried to send you the email, but I can't send anything from my account. I also haven't seen any of the recent emails. I submitted a ticket and will send it ASAP." The "email" Ms. Brooks was referring to in this email was the proof Dr. Span requested that Ms. Brooks send him regarding her postings in Blackboard regarding grade discrepancies and the final exam.

37. When the problem with her email was resolved a few days later, approximately on or around May 7, 2021, Ms. Brooks had a number of new emails from students and staff, dating back to at least April 16, 2021, that she had not previously received. Ms. Brooks promptly began responding to the emails. Ms. Brooks believed that her responsive emails were received by the recipients.

38. Not long after the first problem with Ms. Brooks' email was corrected, she again began experiencing problems with her emails. Ms. Brooks believed the problem this time was with Microsoft, because she believed the IT Department had just finished correcting her earlier email problems. Ms. Brooks contacted Microsoft regarding the problem. Approximately one week later, after multiple contacts to Microsoft, Ms. Brooks finally received a response from Microsoft that there was nothing it could do regarding the problems she was experiencing.

39. On May 18, 2021, Ms. Brooks submitted another ticket, Ticket No. 180275, to IT regarding the new problems with her email. Ms. Brooks stated on the ticket, "I am

unable to access my work email account. I am directed to enter my password, but it is not accepted. I tried to solve this online, but my address is not recognized. Please advise."

40. When the second problem with her email was resolved, Ms. Brooks discovered a number of new emails from students and staff she had not previously received.

41. On or around May 24, 2021, Ms. Brooks looked at her class schedule to check the number of students enrolled in her classes for the summer semester and found that her classes had been reassigned to another instructor. Ms. Brooks looked at the fall schedule and she was still assigned to classes for the fall semester. Believing that it was a clerical error, Ms. Brooks contacted Dr. Span and Margie Bacon, Division Assistant. Dr. Span responded to Ms. Brooks to contact Brandi Bain, Vice President, Talent Development/Legal Affairs (formerly Human Resources), which she did.

42. Ms. Bain told Ms. Brooks that Dr. Span and Dr. Terri Ackland, Dean of Arts and Social Sciences, had unsuccessfully made numerous attempts to reach out to her for a meeting and that they made a decision to retract her "Letter of Intent to Employ" for the 2021-2022 fiscal year due to performance related concerns and issues.

43. Prior to this discussion, Ms. Brooks had never received any counselings or warnings related to her job performance. In fact, Dr. Span sent Ms. Brooks an email sometime in or around early May congratulating her for transitioning into the lead faculty position. Additionally, Ms. Brooks had previously received the May 4, 2021 "2021/2022 Letter of Intent to Employ" and her summer and fall class schedules.

44. That same day, on or around May 24, 2021, after speaking to Ms. Bain, Ms. Brooks saw for the first time the May 19, 2021 letter to her notifying her of her supervisory chain's decision not to renew her "Letter of Intent to Employ" with CAC for the 2021-2022 fiscal year, the retraction of the May 4, 2021 "2021/2022 Letter of Intent to Employ", and stating that her "last day under contract with [CAC] was May 18, 2021", which had been emailed to her on May 19, 2021.

45. Without any procedural due process, CAC unfairly and unjustly terminated the employment of Plaintiff on May 18 or 19, 2021.

46. Additionally, the day after speaking with Ms. Bain, on or around May 25, 2021, Ms. Brooks found several emails she had not previously seen from Dr. Span, as well as the calendar meeting request from Dr. Span and Dr. Ackland, sent on May 15, 2021, which were sent during the month of May 2021, when Ms. Brooks' email was not functioning correctly.

47. Although Ms. Brooks had always responded to everyone at CAC (including students) who contacted her, especially Dr. Span, she was not contacted by telephone or text message by Dr. Span regarding unanswered emails or meeting requests.

48. Prior to this time, Dr. Span had routinely called or text messaged Ms. Brooks if there was a matter he wanted to discuss with her. Ms. Brooks always promptly responded to Dr. Span's phone calls, text messages, and emails. However, in May 2021, she was not called or text messaged when she did not respond to emails.

49. Ms. Brooks did not learn about the missed meeting on May 15, 2021 until she spoke with Ms. Bain and after her contract was rescinded.

50. Additionally, the May 15, 2021 calendar meeting request was sent to her via email by Dr. Span and Dr. Ackland after Ms. Brooks had spoken to Dr. Span and told him about the problems she was having with her email.

51. Ms. Brooks was provided no pre-termination or post-termination hearing by CAC.

52. On May 27, 2021, Ms. Brooks attempted to appeal the decision to rescind her contract by submitting a letter of appeal to Ms. Bain.

53. After receipt of the appeal, Ms. Bain emailed Ms. Brooks on June 10, 2021 that the decision not to renew her contract was not an appealable action and the original decision CAC made stood.

54. CAC provided no opportunity for Ms. Brooks to speak to her supervisor, Dr. Span, regarding the decision to retract her "2021/2022 Letter of Intent to Employ" for

the 2021-2022 fiscal year, no appeal process, and no opportunity for a pre-termination hearing or a post-termination hearing before an appeal board regarding the retraction of her "2021/2022 Letter of Intent to Employ."

55. As a result of CAC's actions, Ms. Brooks has been damaged and continues to be damaged.

56. As a result of CAC's actions, Ms. Brooks has suffered economic loss, compensatory damages, and other tangible and intangible damages.

57. Ms. Brooks has timely filed this lawsuit.

## COUNT I

## (Violation of 42 U.S.C. § 1983)

58. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

59. Federal statute 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

60. As a full-time, non-probationary employee of CAC, Ms. Brooks had a property interest in her employment consistent with state law and CAC's written policies.

61. As a public employee who could only be terminated for cause, Ms. Brooks was entitled to procedural due process in the form of notice, and pre-termination and/or post-termination hearings to assess whether cause existed for her termination.

62. As described herein, CAC acted under the color of state law to deprive Ms. Brooks of her rights, privileges, or immunities guaranteed under federal law and the U.S. Constitution.

63. As described herein, the actions of CAC taken against Ms. Brooks constitute violations of the Fourteenth Amendment to the Constitution of the United States.

64. As described herein, through the actions of CAC, Ms. Brooks has been deprived of her property interest in her public job without procedural due process in violation of the Fourteenth Amendment of the Constitution of the United States.

65. As described herein the actions of CAC, including the lack of a pre-termination hearing, lack of a post-termination hearing, and wrongful termination of Ms. Brooks, constitute violations of the procedural due process rights of Ms. Brooks under the Fourteenth Amendment of the Constitution of the United States.

66. The actions of CAC as described herein violated the clearly established and well recognized constitutional and statutory rights and privileges of Ms. Brooks.

67. Ms. Brooks has suffered humiliation and degradation, pain and suffering, and economic loss due to the unconstitutional and illegal practices of CAC.

68. Under 42 U.S.C. § 1983, CAC is liable to Ms. Brooks for the violations of her constitutional and statutory rights and privileges described herein entitling Ms. Brooks to recover damages and to all other rights, remedies, in law or in equity, available to her under 42 U.S.C. § 1983 or other applicable statutes.

69. Ms. Brooks is also entitled to recover her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

**WHEREFORE,** Plaintiff requests that this court enter judgment in her favor and against Defendant CAC as follows:

A. Declare that the employment practices complained of in this Complaint are unlawful and that they violate 42 U.S.C. § 1983;

B. Order that the Defendant pay Plaintiff for her economic and non-economic damages and losses, including lost wages, back pay, and lost benefits;

C. Order reinstatement of Plaintiff's employment, or in lieu of reinstatement, front pay;

D. Order that the Defendant pay Plaintiff for all emotional distress and bodily harm, pain and suffering, harm to reputation, loss of earning capacity, and all other losses or damages that she has suffered;

E. Order that Defendant pay Plaintiff all general, special, compensatory, consequential, and incidental damages available to her in an amount to be proved at trial;

F. Order Defendant to pay Plaintiff's expenses, costs, and reasonable attorneys' fees pursuant to all applicable federal and state statutes;

G. Award Plaintiff interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

H. Retain jurisdiction over this action to ensure full compliance with the Court's orders and require CAC to file such reports as the Court deems necessary to evaluate such compliance; and

I. For such other and further relief as this Court deems proper and just under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

**DATED** this 11th day of May, 2023.

**JACKSON WHITE**

s/ Michael R. Pruitt
By:   Michael R. Pruitt, SBN 011792
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*